**LESLIE A. FARBER, LLC**
33 Plymouth Street, Suite 204
Montclair, NJ 07042
Ph. (973) 509-8500
eMail:  LFarber@LFarberLaw.com
Attorneys for Defendant John Doe subscriber
 assigned IP address 66.108.252.117

| | |
|---|---|
| **MALIBU MEDIA, LLC,**<br><br>                                               *Plaintiff,*<br><br>                   vs.<br><br>**JOHN DOE subscriber assigned IP address 66.108.252.117**,<br><br>                                               *Defendant.* | UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br><br>Hon. Denise L. Cote, U.S.D.J.<br><br>Case No. 1:18-cv-05611-DLC<br><br><br><br>CIVIL ACTION |

### <u>REPLY</u> MEMORANDUM OF LAW OF DEFENDANT JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 66.108.252.117 IN SUPPORT OF MOTION TO QUASH SUBPOENA

LESLIE A. FARBER, ESQ.
         On the Brief

                                                            LESLIE A. FARBER, LLC
                                                            33 Plymouth Street, Suite 204
                                                            Montclair, NJ 07042
                                                            Attorneys for Defendant John Doe
                                                             subscriber assigned IP address
                                                             66.108.252.117

1

Case 1:18-cv-05611-DLC   Document 34   Filed 10/00/18   Page 2 of 14

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................1

STATEMENT OF FACTS .......................................................................................................2

LEGAL ARGUMENT ..............................................................................................................3

    POINT I .........................................................................................................................3

        DEFENDANT HAS STANDING TO CHALLENGE THE SUBPOENA,
        WHICH WOULD SUBJECT THIS DEFENDANT TO UNDUE BURDEN,
        ANNOYANCE, HARASSMENT AND EXPENSE IN A CASE WHERE
        SUBPOENA IS NOT LIKELY TO PROVIDE RELEVANT INFORMATION.
        ...................................................................................................................................3

            Defendant has standing and faces a substantial burden. .............................3

            The Subpoena would subject defendant to undue burden, annoyance,
            harassment and expense…………………………………………………….. 4

            Plaintiff's subpoena is not likely to identify the alleged infringer...............5

    POINT II .......................................................................................................................6

        PLAINTIFF IS NOT WITHOUT A REMEDY IF THE SUBPOENA IS
        QUASHED. ..................................................................................................6

            Plaintiff could change its practices and actually litigate individual cases
            like this or notify ISPs of alleged infringing activity..................................6

            Plaintiff could have participated in the Copyright Alert System to reduce
            the incidents of actual copyright infringement ...........................................6

CONCLUSION..........................................................................................................................9

**PRELIMINARY STATEMENT**

In addition to the supplemental facts and related arguments in reply to plaintiff's opposition to defendant's Motion to Quash that follow in this reply memorandum of law, in the event that defendant's Motion is not granted, defendant would desire to proceed anonymously in this case, which plaintiff consents to in its opposition brief. But anonymity in court papers in this case is of limited value because, if the subpoena is not quashed, plaintiff undoubtedly will proceed against this defendant who will be forced to defend and explain to family and friends (and perhaps her or his employer) why defendant is involved in this litigation and what this case is about.

## STATEMENT OF FACTS

In its brief opposing defendant's Motion, plaintiff attempts to distinguish itself from other pornographers by talking about high production and talent costs, reputation in the industry, among other things. While that may or may not be true, the films plaintiff claims that defendant wrongfully downloaded in this case include titles such as "A Fucking Hot Threesome," "Never Have I Had A Threesome Like This," and "Five Reasons to Love Sex with Blondes." *See* Exhibit A annexed to plaintiff's Complaint. (ECF Doc. 1, 1-1).

Plaintiff alleges in its Complaint that the downloads took place over a sixteen (16) month period. *See* Exhibit A annexed to plaintiff's Complaint (ECF Doc. 1, 1-1).

## LEGAL ARGUMENT

### POINT I

**DEFENDANT HAS STANDING TO CHALLENGE THE SUBPOENA, WHICH WOULD SUBJECT THIS DEFENDANT TO UNDUE BURDEN, ANNOYANCE, HARASSMENT AND EXPENSE IN A CASE WHERE SUBPOENA IS NOT LIKELY TO PROVIDE RELEVANT INFORMATION.**

A.   <u>Defendant has standing and faces a substantial burden.</u>

Contrary to plaintiff's arguments in his brief in opposition to this Motion, a party has standing to challenge a subpoena issued to a third party when the party has a personal or proprietary interest in the information sought by the subpoena.  *See Washington v. Thurgood Marshall Acad.,* 230 F.R.D. 18, 21 (D.D.C. 2005).  Defendant in this case has a personal interest in the personal details sought.  Congress recognized in enacting the Cable Franchise Policy and Communications Act that cable or internet subscribers have a **privacy interest** in their personally identifying information retained by ISPs.  *See* H.R. Rep. 98-934 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655 at *79 ("The Congress is recognizing a right of privacy in personally identifying information collected and held by a cable company . . .").  Defendant's initial brief in support of her, his or its motion points to several decisions acknowledging defendant's privacy interest in the information sought by plaintiff's subpoena.

Also contrary to plaintiff's arguments, this defendant does face a substantial burden as delineated in the plethora of cases cited in defendant's initial brief in support of this Motion, many of which describe the pattern of typical copyright trolls[1] such as the plaintiff in the use of

---

[1] *Third Degree Films v. Does 1-47,* No. 12-10761 (ECF No. 31 at 1) (D. Mass. Oct. 2, 2012) A copyright troll is an owner of a valid copyright who brings an infringement action "not to be made whole, but rather as a primary or supplemental revenue stream."

3

extortion and coercive settlement demands, the low probability that the sought-after information actually would identify the correct defendant(s) (if any), and where the plaintiff has no interest in actually bringing these cases to trial. *See* Defendant's Memorandum of Law in support of this Motion at Points I and II.

Plaintiff is aware that of tremendous financial burden to defend one of these cases. Thus, even if there is limited relevance to the information seeks, plaintiff undoubtedly will amend and proceed against defendant, who then must continue to pay for legal counsel throughout the pleading, discovery, and eventual summary judgment phases of the case, regardless of whether there is any evidence whatsoever of infringement.

Although plaintiff relies to a large extent on the Eastern District of New York decision in *Malibu Media LLC, v. John Doe subscriber assigned IP address 98.116.160.61,* No. 2:15-cv-03504 (E.D.N.Y. Aug. 23, 2016), regarding the standing issue, defendant submits that that court's ruling on standing is against the greater weight of authority.

B. <u>The Subpoena would subject defendant to undue burden, annoyance, harassment and expense</u>

Contrary to plaintiff's claims that nearly court considering the defendant's privacy interest and undue burden in revealing his or her of its identify has found those interests insufficient, defendant's initial brief includes several court decisions finding otherwise which not be reiterated here. In addition, the court described the burden in *Malibu Media LLC v. John Does 1 through 10,* No. 2:12-cv-3623 (ECF No. 7 at 4) (C.D. Cal. June 27, 2012):

> To save himself from embarrassment, even if he is not the infringer, the subscriber will very likely pay the settlement price. And if the subscriber is a business, it will

---

*Id.* at n. 1 (citing James DeBriyn, *Shedding Light on Copyright Trolls: An Analysis of Mass Copyright Litigation in the Age of Statutory Damages,* 19 U.C.L.A. ENT. L. REV. 79, 86 (2012)).

likely pay the settlement to save itself from the hassle and cost of complying with discovery – even though one of its customers or employees is the actual infringer.

Because individual BitTorrent file pieces are worthless by themselves and can never be reconstructed into a copyrighted work, the court in that case required Malibu Media to show which defendant(s) in the "swarm" transmitted a full copy of a copyrighted work, which Malibu Media apparently could not do. *Id.* at 5. "The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial." *Id.* at 6.

C. Plaintiff's subpoena is not likely to identify the alleged infringer.

Even though, in some cases, an internet account subscriber might have some relevant information that might lead to who an actual infringer might be, the internet account subscriber is named as a defendant in this case by her are his IP address, as in this case. This is despite the high risk of false positives, and high risk the actual infringer (if there actually is one) is some third person who somehow got access to defendant's internet connection, whether that be someone in defendant's business or household, or a family guest or customer, or a neighbor, or a stranger driving by who may have hacked or leeched this defendant's internet access. *See* Defendant's Memorandum of Law in support of this Motion at Point II, C.

Thus, since this defendant has a privacy right in the personal information sought, and the information sought is not likely to lead to the identity of the actual infringer (if any) or any other discoverable evidence, defendant will incur a tremendous financial expense to defend the case, divulging it to plaintiff most likely would subject defendant to undue annoyance, harassment, and burden. On balance, where there is a tremendous burden on defendant here, and where the

5

information sought from plaintiff's subpoena is of very limited or no value with a risk of providing misleading information, the burden outweighs the risk.

Despite plaintiff's argument and inclusion of the decision in *Malibu Media LLC, v. John Doe subscriber assigned IP address 98.116.160.61,* No. 2:15-cv-03504 (E.D.N.Y. Aug. 23, 2016), this still does change the fact that one does not know who is doing the actual downloading, whether it be the subscriber, a neighbor, someone else in the household or a passerby.

Accordingly, defendant has standing to Quash plaintiff's Subpoena served on Charter Communications, Inc., in this case.

## POINT II

**PLAINTIFF IS NOT WITHOUT A REMEDY IF THE SUBPOENA IS QUASHED.**

A.  Plaintiff could change its practices and actually litigate individual cases like this or notify ISPs of alleged infringing activity.

As noted above and in defendant's initial brief in support of defendant's Motion to Quash, besides the plaintiff's proof problems, one of the problems courts and innocent defendants have had with these cases is that pornographers like Malibu Media LLC in BitTorrent claims have shown repeatedly that they are not actually interested in prosecuting cases through discovery and rest of the litigation process, but pursue a business model of exacting quick settlements for a fraction of the would-be defendants' potential exposure in the cases.

If plaintiffs such as Malibu Media LLC in this case would file, subpoena and actually litigate these as if they are going to trial, many of these problems would be eliminated and fairer to the defendants, and prove to be less of a burden on the courts.  Plaintiffs like Malibu Media LLC typically wait for the downloads and potential damages from the John Does in a swarm to accumulate before they take any court action, so as to maximize the monetary return from each John Doe.  In this case, plaintiff watched the alleged downloads occur for sixteen (16) months, accumulating potential damages from seven films before taking any action.  Plaintiff also could have notified Charter Communications that downloads of its copyrighted works were coming from a particular IP address because, although that might have stopped the infringing activity, it does not generate income.

B.  Plaintiff could have participated in a Copyright Alert System to reduce the incidents of actual copyright infringement.

Many entertainment industry groups and major internet service providers (ISPs), such as Verizon, teamed up to create the Copyright Alert System.  The system has been used pre-

litigation to educate and dissuade consumers from participating in illegal methods of sharing copyrighted materials online.  *See* Daniel Bean, *Entertainment and Internet Providers Launch Copyright Alert System*, abcNEWS - TECHNOLOGY REVIEW (Feb. 27, 2013, 6:00a.m.) http://abcnews.go.com/blogs/technology/2013/02/entertainment-and-internet-providers-launch-copyright-alert-system/, (last visited March 11, 2013);  *see also* Copyright Alert System http://en.wikipedia.org/wiki/Copyright_Alert_System, (last modified March 11, 2013, last visited March 11, 2013).

Charter Communications' predecessor Time Warner agreed to participate in the 6-strike system or any other method whereby copyright owners send notices of alleged copyright infringement to participating Internet Service Providers, who then forward these notices to their subscribers in the form of Copyright Alerts.  Before initiating litigation, the copyright holder sends up to six (6) alerts of increasing degree of seriousness to the internet subscribers.  The first two are "Educational Alerts," then two "Acknowledgment" Alerts that require a response from the subscriber, and finally two "Mitigation" Alerts that impose minor consequences (such as reducing download speeds) to emphasize the seriousness of the problem.  The Educational Alert includes links to authorized, legal ways to find the desired copyrighted content.  *See* Bean, *supra; and Comcast, AT&T, Cablevision, and other Internet service providers launch Copyright Alert System,* (Feb. 26, 2013, 3:25p.m. PST) http://www.imdb.com/news/ni47909855/, (last visited March 11, 2013).

By using such a system, copyright owners can protect their intellectual property and usually can avoid ensnaring innocent internet subscribers because it is likely that innocent subscribers who receive such notices will investigate who might be using their internet connection for improper purposes and/or take appropriate action to make their connection more

secure.  Although older, actual copyright violations may not be remedied with this system, but if the holders of adult film industry copyrights are serious about actually protecting their copyright, rather than using litigation simply as a revenue stream, they will participate in and work to expand this system as necessary.

As such, plaintiff currently has or had remedies by litigating individual cases and preventing future copyright violations as described above, and/or notifying the ISP of alleged infringing behavior.  But plaintiff chooses not to do that and, thus, helps create a problem of its own making.

Accordingly, defendant's Motion to Quash should be granted.

## CONCLUSION

Nothing in plaintiff's opposing papers establishes jurisdiction over the subscriber-defendant or proper venue here.  For this reason and all of the foregoing reasons and those contained in defendant's original moving papers, defendant's Motion to Quash plaintiff's subpoena to Charter Communication for defendant's name and address should be quashed.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | LESLIE A. FARBER, LLC |
|  |  |
|  | /s/ Leslie A. Farber |
| Dated: October 9, 2018      By: | Leslie A. Farber |
|  | eMail: LFarber@LFarberLaw.com |

## CERTIFICATION OF SERVICE

I hereby certify that on October 9, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.  I also mailed a copy of the foregoing documents to Hon. Denise L. Cote, U.S.D.J., United States Courthouse, Room 18B, 500 Pearl Street, New York, NY 10007.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


|  |  |
|---|---|
|  | /s/ Leslie A. Farber |
| Dated: October 9, 2018 | Leslie A. Farber |
|  | eMail: Lfarber@LFarberLaw.com |